RECEIVED
IN ALEXANDRIA, LA.
JUN 2 5 2014
TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CITY OF ALEXANDRIA | CIVIL ACTION NO. 14-0723 |
| -vs- | JUDGE DRELL |
| H. CRAIG DAVIDSON, JR. | MAGISTRATE JUDGE KIRK |

### REASONS FOR JUDGMENT

Pending before the Court are two motions: (1) a Motion for Preliminary Injunction (Doc. 3) filed by the City of Alexandria; and (2) a Motion to Dismiss Complaint (Doc. 6) filed by H. Craig Davidson, Jr. ("Mr. Davidson"). All responsive pleadings have been filed. For the reasons set forth below, the Court's disposition as to each of these motions will be as follows:

(1) the Motion for Preliminary Injunction (Doc. 3) will be **GRANTED IN PART** and **DENIED IN PART**.

(2) the Motion to Dismiss Complaint (Doc. 6) will be **DENIED**.

I. <u>Background</u>

The present dispute arises from a July 19, 2012 judgment of this Court awarding Mr. Davidson $1.3 million in attorney's fees on a *quantum meruit* basis for his representation of the City in its suit against Cleco Corp. See <u>City of Alexandria v. Cleco Corp.</u>, No. 1:05-cv-01121 (ECF Docs. 705 & 706), 2012 WL 2952546 (W.D. La. July 19,

2012).[1] In an opinion dated January 15, 2014, the Fifth Circuit affirmed the *quantum meruit* award of $1.3 million to Mr. Davidson and held that his contingency-fee contract with the City created a joint, indivisible obligation, which was not performed or performable because of attorney John Sharp's withdrawal from representation. City of Alexandria v. Brown, 740 F.3d 339 (5th Cir. 2014). The Fifth Circuit explained its reasoning in detail:

> We believe that the intent of the parties makes the Sharp/Davidson contract indivisible. The text of the Sharp/Davidson contingency contract makes the 20% fee for acting as the Attorney taking "the lead role" and controlling "all proceedings related to the Claims" contingent upon recovery through either a settlement or award. Accordingly, the parties agreed that Sharp and Davidson's obligation under the contract was to complete the entire representation and prevail before payment was due. As the Sharp/Davidson contract does not contemplate partial performance of the obligation by Sharp and Davidson, we believe it sets out an indivisible obligation.
>
> * * * *
>
> In turn, our determination that the Sharp/Davidson contract sets out a joint, indivisible obligation means that, though we reach the result through a slightly different path, *the district court properly declined to enforce the Sharp/Davidson contingency contract.* [emphasis added] . . . In the Sharp/Davidson contract, Sharp and Davidson promised to provide the services of two attorneys to the City in exchange for 20% of the recovery at the end of the litigation. But Sharp's disbarment put Sharp and Davidson "into a different position altogether from that contemplated by the terms of the contract." [citation omitted] Sharp's disbarment "rendered the contract impossible of performance" because Sharp and Davidson could no longer provide the services of two attorneys to the City. [citation omitted] Regardless of whether Davidson continued minimal work on the case after Sharp's disbarment, *Sharp and Davidson were in default on their joint, indivisible obligation set out by the contingency contract, and could no longer claim the contracted-for contingency fee from the City.* [citation omitted] [emphasis added]
>
> * * * *

---

[1] For a full recitation of the facts in the Cleco litigation, including those related to the attorney's fee dispute between the City and its contingency counsel, see City of Alexandria v. Brown, 740 F.3d 339 (5th Cir. 2014).

> In such a situation, where there was only partial performance of a joint, indivisible obligation before default, we believe that Davidson's recovery must be in *quantum meruit*. Cf. 5 La. Civ. L. Treatise, Law of Obligations § 16.63 ("[I]f a contract is dissolved because of a fortuitous event that occurred after an obligor has performed in part, the obligee is bound, but only to the extent that he was enriched by the obligor's partial performance.").

Id. at 356–57. Furthermore, the court rejected Mr. Davidson's claim for prejudgment interest and attorney's fees based on the unenforceability of the contingency contract:

> Davidson's argument that the district court erred in failing to award prejudgment interest and attorneys' fees *presupposes that Davidson is enforcing a valid contract.* [emphasis added] But because Sharp and Davidson did not perform the joint, indivisible obligation under the contingency contract, and Davidson is entitled only to a *quantum meruit* award, Davidson can neither invoke his contractual right to attorney's fees, nor, because legal interest in a *quantum meruit* suit is due only from the date of final judgment, raise a claim for prejudgment interest.

Id. at 358.

Mr. Davidson applied for rehearing, but his application was denied on February 19, 2014. (Doc. 3-5, Exh. D). Since no further action has been taken to review the Fifth Circuit's ruling, this judgment is now final ("Final Judgment"). See Fed. R. App. P. 4 and 40; U.S. Sup. Ct. Rule 13; Dowling v. Georgia-Pac. Corp., 278 F. App'x 431, 431 (5th Cir. 2008) ("A judgment is final when it terminates litigation on the merits and leaves the court with nothing to do except execute the judgment." (quoting Zink v. U.S., 929 F.2d 1015, 1020 (5th Cir. 1991)).

On April 3 and 4, 2014, the City filed a "Complaint for Preliminary and Permanent Injunction" (Doc. 1) ("Complaint") and an "Application for Preliminary Injunction" (Doc. 3), pursuant to the All Writs Act, 28 U.S.C. § 1653, and the Anti–Injunction Act, 28 U.S.C. § 2283. The City claims injunctive relief is necessary to uphold the force and effect of the

3

Final Judgment and to avoid relitigation of an issue(s) already presented to and decided by both this Court and the Fifth Circuit—namely, the enforceability of Mr. Davidson's contingency-fee contract with the City ("Contract"). In response, Mr. Davidson filed a countervailing "Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)" (Doc. 6).

II. <u>Legal Standards</u>

    A.    Motion to Dismiss

        1.    *<u>Lack of Subject-Matter Jurisdiction under 12(b)(1)</u>*

Pursuant to Fed. R. Civ. P. 12(b)(1), a party may obtain dismissal of a claim for "lack of subject-matter jurisdiction." In deciding a 12(b)(1) motion, the Court may consider evidence outside of the pleadings and the attachments thereto. <u>Ambraco, Inc. v. Bossclip B.V.</u>, 570 F.3d 233, 237–38 (5th Cir. 2009). More specifically, "under Rule 12(b)(1), the court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." <u>Lane v. Halliburton</u>, 529 F.3d 548, 557 (5th Cir. 2008) (quotations omitted). However, "no presumptive truthfulness attaches to the plaintiffs allegations, and the court can decide disputed issues of material fact in order to determine whether or not it has jurisdiction to hear the case." <u>Montez v. Dep't of Navy</u>, 392 F.3d 147, 149 (5th Cir. 2004).

4

### 2. *Failure to State a Claim under 12(b)(6)*

Rule 12(b)(6) provides that a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This "plausibility" requirement "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). Simply put, if "the plaintiff pleads factual content that allows the court to draw the inference that the defendant is liable for the misconduct alleged," the 12(b)(6) motion should be denied. Id.

In deciding whether the Complaint states a plausible claim for relief, the Court must accept all well-pleaded facts as true, view them in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. C.H. v. Rankin County Sch. Dist., 415 F. App'x 541, 545 (5th Cir. 2011). Moreover, our analysis is typically confined to the contents of the pleadings and their proper attachments. Hale v. King, 642 F.3d 492, 499 (5th Cir. 2011).

### B.   Authority to Enjoin State Court Action

The All Writs Act empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. However, the Court's power to enjoin an action in a Louisiana state court is severely limited by the Anti–Injunction Act, which prohibits any injunction of a state court proceeding "except as expressly authorized by an Act of

Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. These exceptions are specifically defined and narrowly construed. See Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 146 (1988).

This case involves the last of the Act's three exceptions ("to protect or effectuate" federal court judgments), commonly termed the "relitigation exception," which

> permits an injunction to prevent state litigation of a claim or issue that previously was presented to and decided by the federal court. The exception is founded in the well-recognized concepts of res judicata and collateral estoppel, but is strict and narrow, requiring that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." The exception permits, but does not mandate, that federal courts enjoin duplicative state court proceedings.

Blanchard 1986, Ltd. v. Park Plantation, LLC, 553 F.3d 405, 407 (5th Cir. 2008). Thus, the party seeking an injunction

> must make a strong and unequivocal showing of relitigation of the same issue in order to overcome the federal courts' proper disinclination to intermeddle in state court proceedings. If [the Court] err[s], all is not lost. A state court is as well qualified as a federal court to protect a litigant by the doctrines of res adjudicata and collateral estoppel.

Id. at 608 (quoting S. Cal. Petroleum Corp. v. Harper, 273 F.2d 715, 719 (5th Cir. 1960)).

The Fifth Circuit has outlined a four-part test for determining the applicability of the relitigation exception under the doctrine of res judicata:

> First, the parties in a later action must be identical to (or at least in privity with) the parties in a prior action. Second, the judgment in the prior action must have been rendered by a court of competent jurisdiction. Third, the prior action must have concluded with a final judgment on the merits. Fourth, the same claim or cause of action must be involved in both suits.

Vines v. Univ. of La. at Monroe, 398 F.3d 700, 704–05 (5th Cir. 2005). Moreover, the doctrine of collateral estoppel applies when a "previously litigated issue of law or fact"

is (1) "identical to the present issue," (2) "actually litigated, " (3) "necessary to a final judgment," and (4) "reviewed under the same standard as the present issue." Duffy & McGovern Accommodation Servs. v. QCI Marine Offshore, Inc., 448 F.3d 825, 830 (5th Cir. 2006) (citations omitted).

### C. Preliminary Injunction Standard

Even if injunctive relief is warranted under the relitigation exception, a movant must also satisfy the traditional preliminary injunction test, which requires a four-part showing that: (1) "he is likely to succeed on the merits;" (2) "he is likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in his favor;" and (4) "an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 23 (2008) (citations omitted); see also Chick Kam Choo, 486 U.S. at 145–46. A preliminary injunction is an extraordinary, equitable remedy "never awarded as of right. In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. Winter, 555 U.S. at 24 (citations and quotations omitted).

## III. Analysis

In the present action, the City seeks to enjoin Mr. Davidson and the Ninth Judicial District Court in and for Rapides Parish, Louisiana ("State Court") from proceeding with the litigation of Bridgett Brown, Craig Davidson, John Sharp v. City of Alexandria, Cleco Corp., Cleco Power, L.L.C., Suit No. 240,524, 9th Judicial District Court, Parish of Rapides, State of Louisiana (Doc. 6-3, Exh. 8) ("State Court Suit"), and from enforcing the preliminary injunction issued therein (Doc. 6-3, Exh. 9) ("State Court Injunction"). The

City also seeks to enjoin Mr. Davidson from "instituting any proceeding" to relitigate the efficacy of the Contract "via the purported enforcement of the 'attorney fee lien and privilege' against the City of Alexandria, Cleco, the settlement proceeds of the Cleco Litigation, or via any other legal theory." (Doc. 1 at pp. 13–14).

### A. Motion to Dismiss

Mr. Davidson responds that the Complaint should be dismissed for lack of jurisdiction and for failure to state a claim because the Court previously declined to exercise supplemental jurisdiction over the lien and injunction issues, and the City has failed to prove the Court has valid jurisdiction.

The All Writs Act and the Anti–Injunction Act do not confer independent subject-matter jurisdiction. Instead, "jurisdiction is based on the original case," and it is "not necessary for the district court to have jurisdiction over the second suit as an original action." Regions Bank of La. v. Rivet, 224 F.3d 483, 494 (5th Cir. 2000). Because this Court had original jurisdiction over the attorney's fee dispute in the Cleco litigation, we also have jurisdiction over the City's claims in the present action. Further, and contrary to Mr. Davidson's assertions, this is not a situation in which the federal and state courts are attempting to exercise *in rem* jurisdiction over the same property. Accordingly, Mr. Davidson's motion to dismiss under 12(b)(1) is without merit.

Next, Mr. Davidson concedes that his motion to dismiss under Rule 12(b)(6) is also based on the alleged jurisdictional defect: "The issues governing the lack of jurisdiction and failure to state a claim are intertwined. . . As the party asserting jurisdiction, the City had the burden to prove jurisdiction. It did not do so." (Doc. 11 at p. 2). However, his

8

argument overlooks the fact that the City alleged the following jurisdictional facts in its Complaint:

> [T]his Court has jurisdiction of this matter based on the Court's original jurisdiction in <u>City of Alexandria vs. Cleco[,] et al.</u>, Case No. 1:05-cv-01121, Western District of Louisiana[,] which . . . raised issues pertaining to violations of electric tariffs approved by the Federal Energy Regulatory Commission, and the district court exercised subject matter jurisdiction over those claims pursuant to 28 U.S.C. § 1331 and 16 U.S.C. § 825p. . . [T]he district court adjudicated attorneys' fee claims made by former contingency fee counsel for the City, Davidson, John Sharp . . . and Bridgett Brown . . . under the same caption. With regard to the attorneys' fee claims against the City, the district court exercised supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

(Doc. 1 at pp. 1–2). Construing the Complaint in the light most favorable to the City, we find this allegation meets the plausibility requirement for subject-matter jurisdiction. We also find the City has alleged numerous facts to illustrate a plausible claim for injunctive relief under the relitigation exception to the Anti–Injunction Act. Therefore, Mr. Davidson's 12(b)(6) motion to dismiss is also without merit.

### B. Enjoining Litigation of State Court Suit

According to the City, Mr. Davidson's claims in the State Court Suit are reliant upon allegations that the Contract is fully enforceable and that he holds a valid attorney's fee lien on the Cleco settlement funds pursuant to the Contract, which is subject to the Final Judgment declaring it to be unenforceable. Therefore, Mr. Davidson's pursuit of the State Court Suit would result in the relitigation of issues already decided by this Court and the Fifth Circuit. Mr. Davidson responds that the relitigation exception does not apply because: (1) his pursuit of the State Court Suit is merely an attempt to

enforce and collect on the final *quantum meruit* award of $1.3 million; and (2) the validity of his lien rights under La. R.S. § 37:218 was not presented to or decided by either court.

### 1.   *Relitigation of the Contract's Enforceability*

We find that the relitigation exception applies under the doctrine of collateral estoppel to preclude litigation of the Contract's enforceability in the State Court Suit. First, the State Court Suit alleges that "[t]he Contracts between Sharp, Davidson, Brown and the City remain fully enforceable." As noted above, this exact issue—the enforceability of the Contract between Mr. Davidson, John Sharp, and the City—was presented to and "actually litigated" in this Court and the Fifth Circuit, both of which held it to be unenforceable. Second, the determination of this issue was essential to the outcome of the Final Judgment because, in declining to enforce the Contract, the Court calculated Mr. Davidson's fee on a *quantum meruit* basis. Accordingly, the State Court Suit requires relitigation of an issue (indeed, the **principal** issue) resolved by this Court and the Fifth Circuit.

### 2.   *Relitigation of Validity and Effect of Lien Under La. R.S. § 37:218*

However, we reach a different conclusion with respect to the City's attempt to enjoin Mr. Davidson from attempting to litigate the validity and effect of his purported attorney's fee lien. As Mr. Davidson correctly emphasizes, neither this Court nor the Fifth Circuit decided whether Mr. Davidson retains a valid lien under La. R.S. § 37:218 and, if so, what rights he has pursuant to that lien. And, although this Court was faced with § 37:218 lien issues in a prior action in the Cleco litigation, we expressly declined to exercise jurisdiction over such issues:

> Since decisions regarding the liens and the injunction are not essential to our determination of what attorney's fees may or may not be due, these issues, then, are a separate and completely different controversy. Therefore, there is no need to delay consideration of the attorney's fee claim while these side issues meander through the appellate process.

(Doc. 6-3, Exh. 7 at p. 4).

The City's claim rests upon the assumption that Mr. Davidson could not, as a matter of law, hold a valid attorney's fee lien under § 37:218 because the Contract was held to be unenforceable. However, in ruling that the Contract is unenforceble, the Fifth Circuit also observed that, when "a contract is dissolved because of a fortuitous event that occurred after an obligor has performed in part, the obligee is bound, but only to the extent that he was enriched by the obligor's partial performance." City of Alexandria, 740 F.3d at 357. While we believe the lien to be a mere adjunct to the right to recover attorney's fees pursuant to a contract under § 37:218, the parties have not cited, and we have not found, a single case addressing whether a valid attorney's fee lien under § 37:218 still exists when the underlying contingency-fee contract "is dissolved because of a fortuitous event that occurred after [the] obligor has performed in part."

Nevertheless, Mr. Davidson cites a number of cases allowing discharged attorneys to enforce their liens under § 37:218 to recover fee awards based on *quantum meruit*, rather than enforcement of a contingency contract. These cases demonstrate the willingness of Louisiana courts to uphold the § 37:218 attorney's fee lien, even when the contingency contract and the attorney's representation under that contract are terminated. Accordingly, the determination of whether Mr. Davidson has a valid lien for the awarded amounts under La. R.S. § 37:218, as well as the effect of such a lien on his

11

ability to execute on the Final Judgment by seizing assets generally, and by seizing the $3 million held in escrow specifically, are live issues, the litigation of which is not precluded by the Final Judgment. However, such decisions regarding the validity and effect of the purported lien are **not** essential to the resolution of the present action. Given the novelty of these issues and the lack of Louisiana jurisprudence, we would likely have to make an Erie[2] guess with little to go on. Therefore, we find that these issues are best left for determination in the State Court Suit.

For these reasons, we deny the City's request for a preliminary injunction barring Mr. Davidson and the State Court from proceeding with litigation of the State Court Suit, insofar as it concerns the validity and effect of Mr. Davidson's lien rights under La. R.S. § 37:218, but only as to the amount awarded in the Final Judgment.

    3.    *Relitigation of* Quantum Meruit *Award*

Mr. Davidson claims he is merely attempting to enforce and collect on the Final Judgment. Out of an abundance of caution, however, we observe that the amount of the *quantum meruit* award in favor of Mr. Davidson ($1.3 million plus legal interest from the date of judgment and costs as provided by law), as well as the enforceability of the underlying Contract, are subject to the Final Judgment. Therefore, the doctrine of res judicata precludes any claims to increase the amount of the fee award or to re-argue the enforceability of the underlying Contract.

    4.    *Application of Preliminary Injunction Standard*

Because we find a limited injunction is warranted under the relitigation exception, we now consider whether the City's claim survives the traditional test for preliminary

---

[2] Erie R. Co. V. Tompkins, 304 U.S. 64 (1938).

injunctive relief. First, and for the reasons discussed above, the City has shown a substantial likelihood of success on the merits. Second, the City maintains it is entitled to injunctive relief without a showing of irreparable harm because Mr. Davidson intends to use the State Court Suit to seize public funds in satisfaction of a money judgment, which directly contravenes Louisiana law and the Louisiana Constitution. See La. Const. Art. XII, § 10(C); La. R.S. § 13:5109B(2). For the reasons discussed below, the Court is not persuaded by this argument. Alternatively, the City asserts that the costs of relitigating the issue of the Contract's enforceability are not recoverable and would irreparably injury the City. See Quintero v. Kaveness Ship Lines, 914 F.2d 717, 720 (5th Cir. 1990).

Third, the City claims that, without an injunction, it will effectively be required to waste pubic funds in the defense of previously-litigated claims or issues, to the detriment of both the City and the public at large. Mr. Davidson, on the other hand, would not be prejudiced by an injunction solely to prevent relitigation of the enforceability of the Contract, or the amount of the *quantum meruit* award. As discussed below, we do not enjoin Mr. Davidson from litigating the validity and effect of his La. R.S. § 37:218 lien rights, limited to the final judgment award, nor will we preclude him from pursuing other avenues of relief in an effort to execute on the Final Judgment, to the extent they do not involve religation of the Contract's enforceability or the amount of the fee award, which issues are precluded by the Final Judgment. Finally, an injunction solely to prevent relitigation of the Contract's enforceability and the amount of the *quantum meruit* award would serve the public interest, both by preventing the unnecessary expenditure of City funds to defend a previously-decided issue and by

preserving State judicial resources for the litigation of undecided claims and issues. Under these circumstances, we believe a limited injunction barring further adjudication or relitigation of the following issues is appropriate: (1) the enforceability of the Contract; and (2) the actual attorney's fees awarded.

### C.     Enjoining Enforcement of State Court Injunction

Next, the City argues that the State Court should be enjoined from continuing to enforce its injunction, which requires the City to maintain $3 million of the Cleco settlement proceeds in its Utility System Enterprise Fund. (Doc. 6-3, Exh. 9). It maintains that enforcement of the State Court Inunction constitutes partial enforcement of the Contract, which this Court has deemed unenforceable. But because we have determined that the Final Judgment does not preclude a State Court adjudication of the validity and effect of Mr. Davidson's lien rights under La. R.S. § 37:218, we also find that the Final Judgment does not preclude the continued enforcement of the State Court Injunction. Furthermore, an injunction against enforcement of the State Court Injunction would not be appropriate, because no court has been presented with and decided the validity and effect of Mr. Davidson's lien under § 37:218. If Mr. Davidson is found to have a valid lien on the settlement funds, and if these funds are disbursed, his lien likely dissolves. See Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213–14 (2002). Accordingly, we deny the City's request for a preliminary injunction to enjoin Mr. Davidson and the State Court from further litigation on the effect and enforcement of the State Court Injunction.

### D. Enjoining Action to Enforce Final Judgment

In its final claim, the City requests an injunction preventing Mr. Davidson from "instituting any proceeding" to relitigate the efficacy of the Contract "via the purported enforcement of the 'attorney fee lien and privilege' against the City of Alexandria, Cleco, the settlement proceeds of the Cleco Litigation, or via any other legal theory." (Doc. 1 at pp. 13–14). As noted above, we have already determined that the Final Judgment does not preclude a State Court adjudication of the validity of Mr. Davidson's lien rights under La. R.S. § 37:218, but only as to the amount awarded in the Final Judgment. We similarly find that the Final Judgment does not preclude an adjudication of Mr. Davidson's rights to collect or enforce the Final Judgment "via any other legal theory." But even if the relitigation exception were applicable in this instance, such a broad injunction would effectively preclude Mr. Davidson from pursuing any action to enforce or collect on the Final Judgment, including, for example, the action to make the Final Judgment executory in the State Court.

Under the Federal Rules of Civil Procedure and the Louisiana Code of Civil Procedure and Revised Statutes, Mr. Davidson has the right to proceed with the execution of the Final Judgment in this Court <u>or</u> in the State Court; correspondingly, both courts have authority to adjudicate such an action. See Fed. R. Civ. P. 69; La. Code Civ. Proc. Ann. art. 2541; La. R.S. § 13:4241, *et seq.* Thus, even if an injunction were warranted under the relitigation exception, the principles of comity, federalism, and equity would restrain the Court from exercising its discretion to grant injunctive relief.

The City argues, however, that Mr. Davidson's attempt to utilize the Contract to seize the proceeds of the Cleco settlement in the State Court Suit or another proceeding would amount a seizure of public funds forbidden by Louisiana law and the Louisiana Constitution. La. Const. Art. XII, § 10(C); La. R.S. § 13:5109B(2). The City is correct that a federal court's seizure and execution powers are generally governed by the law of the state in which it sits, subject to a "federal interest" or "congressional mandate" exception that "a federal statute governs to the extent it applies." Fed. R. Civ. P. 64 and 69. We consider whether this exception would apply in this case to be an open question. Compare Bowman v. City of New Orleans, 747 F. Supp. 344 (E.D. La. 1989) (permitting seizure of city property, under Fed. R. Civ. P. 69 and despite the contrary state constitutional and statutory provisions cited by the City here, to satisfy an unpaid judgment for attorney fees against the city arising out of a suit to strike down an unconstitutional city ordinance); with Bruno v. New Orleans, 724 F. Supp. 1222 (E.D. La. 1989) (not permitting seizure, under and secondary to the same rules and statutes, of city property to satisfy an unpaid judgment arising out of a federal civil rights suit).

As Mr. Davidson correctly notes, the City made the very same arguments in connection with another action in this Court. (See Doc. 3-1 at pp. 12–13). In support of its position, the City cited a number of cases involving the enforcement of money judgments against the state or its political subdivisions, whether from general public funds, by the seizure and sale of public property, or through mandamus ordering that the municipality appropriate the requisite funds. See Newman Marchive P'ship, Inc. v. Shreveport, 979 So. 2d 1262 (2008). Stated differently, these cases involve the issue of the

judiciary's substituting its judgment for the discretion of the legislature in deciding how to allocate or dispose of general public property. Id.

We find another case, Sanford v. Town of Ball, 999 So.2d 304 (La. App. 3d Cir. 2008), more analogous. That case, discussing at length the relevant constitutional and statutory provisions and the cases mentioned above, involved a suit against a municipality where the Board of Alderman had passed a resolution prohibiting the town from paying the judgment. The Court acknowledged that "any payment to the plaintiffs would have by necessity had to have been appropriated from public funds" pursuant to the Louisiana constitutional and statutory provisions discussed by the City here. In the face of the town's refusal, it lacked the power to order such payment. Id. at 308. However, the municipality had received, in a settlement with its liability insurer, a sum equal to the amount of the judgment, "tendered to [the town] only to pay the damages resulting from the incidents" giving rise to the claim, a purpose which the town acknowledged in signing the settlement release. Id. at 309. The court found that, despite the specific town resolution to the contrary, "upon execution of the release the funds received . . . were dedicated to pay the judgment of [the] court;" therefore, the decision on how to allocate the funds had already been made, and "no element of discretion was left." Id. Instead, what had to be ordered was only "a 'ministerial duty.'" Id. The town "had a simple, definite duty, arising under conditions to which it admitted and agreed when it signed the release and accepted the check." Id. Therefore, the court could order these specific funds paid to the judgment creditors, notwithstanding the provisions of Louisiana law to the contrary.

Similar to the situation in <u>Ball</u>, the City of Alexandria admittedly received a sum of monies from Cleco pursuant to a settlement agreement, which it signed. As we understand the State Court litigation, the City retained $3 million of the Cleco settlement proceeds in its Utility System Enterprise Fund. The State Court granted an injunction in favor of Mr. Davidson, enjoining the City from disposing of any portion of the $3 million and requiring it to maintain a balance of at least $3 million in that Fund. (Doc. 6-3, Exh. 9). Although factually distinguishable from <u>Ball</u>, in which the terms of the settlement provided that funds were to be received only for the purpose of paying certain third parties, the State Court required the City to maintain $3 million in escrow for the specific purpose of protecting the potential lien and enforcement rights of Mr. Davidson and the other claimant attorneys. Whether this also gives the State Court or this Court the power to order the payment of the funds to Mr. Davidson, despite La. R.S. § 13:5109B(2) and the Louisiana Constitution, is a live issue that remains to be determined in the enforcement proceedings.

Notably, the court in <u>Ball</u> found it had the power to order payment of the funds to the third parties. This reasoning could easily be applied in the present case, and, in fact, the differences between this case and <u>Ball</u> strengthen the conclusion reached in that case. In particular, the third-party payor in <u>Ball</u> was an insurance company, which was not a party to the suit giving rise to the judgment, and the release signed by the town was separate from the underlying suit. Here, the third-party payor was Cleco, which <u>was</u> a party in the underlying lawsuit filed by the City. Moreover, the funds at issue were paid pursuant to a settlement in the Cleco litigation, which settlement we approved. The

inherent and latent power that a court ordinarily retains over parties and settlements thus provides an additional source and reason to indicate that we have authority to order the payment—or non-payment—of the funds at issue here. But, so does the State Court.

Likewise and finally, we note that not all funds in the possession of a municipality are "public funds." See Bd. of Dirs. of the Indus. Dev. Bd. of the City of New Orleans v. All Taxpayers, 848 So.2d 740, 749 (La. App. 4th Cir. 2003). The parties did not fully brief this issue and its final resolution is best left for determination in a proceeding to enforce the Final Judgment. However, when a city receives funds not from the public through taxes but from its actions as a private plaintiff before this Court, when it only receives these funds by agreeing to a settlement, and when a set of third parties contemplated by the settlement hold potentially valid and senior liens in these funds, we would, on its face, find it perverse to deem these funds "public funds" beyond the purview of our jurisdiction. See Ball, 999 So. 2d at 307. In all, the applicable jurisprudence suggests we are not forbidden from ordering the ministerial payment of such funds where there is no need for an exercise of discretion as to their allocation, and the municipality has previously agreed to the overarching payment conditions.

Nevertheless, as no actual enforcement action is pending here, we decline to decide whether a court has the power to order execution of the Final Judgment in contravention of state law. This issue is best left for determination in an enforcement proceeding in this Court or in the one already existing in State Court.

## IV. Conclusion

Considering the hearing held this date, and in accordance with the foregoing reasons, the Motion for Preliminary Injunction (Doc. 3) filed by the City will be **GRANTED IN PART**, to the extent that the State Court will be enjoined and prohibited from further adjudicating the issues of (1) the Contract's enforceability, and (2) the amount of the attorney's fee award made in the Final Judgment. Mr. Davidson and his counsel will also be enjoined from further relitigation of the aforementioned issues. In all other respects, the City's Motion for Preliminary Injunction will be **DENIED**. The Motion to Dismiss Complaint (Doc. 6) filed by Mr. Davidson will also be **DENIED**.

SIGNED on this 25 day of June, 2014 at Alexandria, Louisiana.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT